DAVID LOY, Cal. Bar No. 229235
ANN CAPPETTA, Cal. Bar No. 354079
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901-3334
Telephone:  415.460.5060
Facsimile:  415.460.5155
Email:      dloy@firstamendmentcoalition.org
            acappetta@firstamendmentcoalition.org

KEL MCCLANAHAN, DC Bar No. 984704 (*Pro Hac Vice*)
NATIONAL SECURITY COUNSELORS
1451 Rockville Pike, Suite 250
Rockville, MD 20852
Telephone:  501.301.4672
Email:      kel@nationalsecuritylaw.org

Attorneys for Plaintiffs MSW MEDIA, INC. and
FIRST AMENDMENT COALITION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MSW MEDIA, INC., and FIRST AMENDMENT COALITION, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DOGE SERVICE, <br><br> and <br><br> OFFICE OF MANAGEMENT AND BUDGET, <br><br> Defendants. | Case No. 3:25-cv-2881 (AMO) <br><br> **FIRST AMENDED COMPLAINT** |

**FIRST AMENDED COMPLAINT**

Plaintiffs MSW Media, Inc. and First Amendment Coalition (collectively "Plaintiffs") bring this action against Defendants United States DOGE Service and Office of Management and Budget pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651

**PARTIES**

1. Plaintiff MSW Media, Inc. ("MSW Media") is a media business incorporated in the state of California and has the ability to disseminate information on a wide scale. MSW Media's principal place of business is 3245 University Avenue, Suite 163, San Diego, CA 92104.

2. Plaintiff First Amendment Coalition ("FAC") is a California non-profit corporation dedicated to freedom of speech and government transparency. FAC provides legal information and consultations to journalists, academics, bloggers, and ordinary persons regarding access rights under FOIA and California's various open-government laws. FAC files amicus briefs in important appeals, both in state and federal courts, including the United States Supreme Court. FAC also files litigation to defend and expand the rights of the public and press under access laws, including FOIA. FAC's principal place of business is 534 Fourth Street, Suite B, San Rafael, CA 94901.

3. Defendant United States DOGE Service ("USDS") is an agency within the meaning of 5 U.S.C. § 552(f)(1), and is in possession and/or control of the records requested by Plaintiffs which are the subject of this action. As a component of the Executive Office of the President ("EOP"), USDS is headquartered at 1600 Pennsylvania Avenue, NW, Washington, DC 20500.

4. Defendant Office of Management and Budget ("OMB") is an agency within the meaning of 5 U.S.C. § 552(f)(1), and has the legal authority and responsibility to ensure that all agencies accept electronic FOIA requests. OMB is headquartered at 725 17th Street, NW, Washington, DC 20503.

**JURISDICTION**

5. This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

**VENUE**

6. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

**INTRADISTRICT ASSIGNMENT**

7. Because FAC's office is located in Marin County, assignment of this case to the San Francisco Division of the Northern District of California is appropriate pursuant to Civil Local Rule 3-2(c)–(d).

**STATUTORY FRAMEWORK**

8. FOIA, 5 U.S.C. § 552, requires agencies of the federal Government to release requested records to the public unless one or more specific exemptions apply.

9. This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

10. "A FOIA requester may also assert a FOIA pattern or practice claim—a 'claim that an agency *policy or practice* will impair the party's lawful access to information in the future.'" *Hajro v. U.S. Citizenship & Imm. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016).

**BACKGROUND**

*PART I: DOGE BEFORE USDS*

11. On 19 August 2024, after a campaign event in Pennsylvania, Candidate Trump was asked if would consider an administration position for Elon Musk ("Musk") if elected. Candidate Trump replied, "I certainly would, if he would do it, I certainly would. He's a brilliant guy." That evening, Musk replied from a personal social media account, "I am willing to serve," along with an Artificial Intelligence-generated image of himself standing at a lectern labeled "D.O.G.E. Department of Government Efficiency." This image is the earliest known use of "D.O.G.E." or reference to the "Department of Government Efficiency." The DOGE acronym is a tongue-in-cheek reference to Dogecoin, a cryptocurrency in which Musk has personally invested and which he regularly promoted on social media.

12. On 12 November 2024, following his election victory, President-Elect Trump announced in a statement from his transition team, published on social media, that he intended to

appoint Musk and former presidential candidate Vivek Ramaswamy to "lead the Department of Government Efficiency ('DOGE')," which he described as a new entity that would "provide advice and guidance from outside of Government" and would "partner with the White House and Office of Management & Budget to drive large scale structural reform, and create an entrepreneurial approach to Government never seen before." He further stated that he "look[ed] forward to Elon and Vivek making changes to the Federal Bureaucracy," and set a termination date of 4 July 2026 for this new advisory committee.

13. On 20 November 2024, Musk and Ramaswamy authored an opinion editorial in the *Wall Street Journal* in which they stated that "President Trump has asked the two of us to lead a newly formed Department of Government Efficiency, or DOGE, to cut the Federal Government down to size."

14. Most relevant for this litigation, Musk and Ramaswamy then stated their intention to, through DOGE, effect "mass head-count reductions across the federal bureaucracy" through executive action:

> DOGE intends to work with embedded appointees in agencies to identify the minimum number of employees required at an agency for it to perform its constitutionally permissible and statutorily mandated functions. The number of federal employees to cut should be at least proportionate to the number of federal regulations that are nullified: Not only are fewer employees required to enforce fewer regulations, but the agency would produce fewer regulations once its scope of authority is properly limited. Employees whose positions are eliminated deserve to be treated with respect, and DOGE's goal is to help support their transition into the private sector. The president can use existing laws to give them incentives for early retirement and to make voluntary severance payments to facilitate a graceful exit.
>
> Conventional wisdom holds that statutory civil-service protections stop the president or even his political appointees from firing federal workers. The purpose of these protections is to protect employees from political retaliation. But the statute allows for "reductions in force" that don't target specific employees. The statute further empowers the president to "prescribe rules governing the competitive service." That power is broad. Previous presidents have used it to amend the civil service rules by executive order, and the Supreme Court has held— in *Franklin v. Massachusetts* (1992) and *Collins v. Yellen* (2021) that they weren't constrained by the Administrative Procedures [sic] Act when they did so. With this authority, Mr. Trump can implement any number of "rules governing the competitive service" that would curtail administrative overgrowth, from large-scale firings to relocation of federal agencies out of the Washington area. Requiring federal employees to come to the office five days a week would result in a wave of voluntary terminations that we welcome: If federal employees don't want to show

up, American taxpayers shouldn't pay them for the Covid-era privilege of staying home.

15. On 12 January 2025, the *New York Times* reported, citing "people who have insight into DOGE's operations," "The goal is for most major agencies to eventually have two DOGE representatives." This report added that "the minority of people not detailed to agencies would be housed within the Executive Office of the President at the U.S. Digital Service" and that "DOGE is also expected to have an office in the Office of Management and Budget."

16. This report also noted, "People involved in the operation say that secrecy and avoiding leaks is paramount, and much of its communication is conducted on Signal, the encrypted messaging app."

17. This claim is supported by a public blog post by Vinay Hiremath, who worked with DOGE for four weeks in November and December:

> After 8 calls with people who all talked fast and sounded very . . . smart, I was added to a number of Signal groups and immediately put to work. . . . Within 2 minutes of talking to the final interviewer for DOGE, he asked me if I wanted to join. I said "yes'". Then he said "cool" and I was in multiple Signal groups. I was immediately acquainted with the software, HR, and legal teams and went from 0 to 100 taking meetings and getting shit done. This was the day before Thanksgiving.
>
> The next 4 weeks of my life consisted of 100s of calls recruiting the smartest people I've ever talked to, working on various projects I'm definitely not able to talk about, and learning how completely dysfunctional the government was.

### *PART II: DOGE BECOMES USDS AND BEGINS EXERCISING AUTHORITY*

18. On 20 January 2025, President Trump issued Executive Order 14,158, entitled *Establishing and Implementing the President's "Department of Government Efficiency"* ("the Order" or "E.O. 14,158").

19. The Order stated that the existing U.S. Digital Service, which was housed in OMB, was renamed the U.S. DOGE Service and moved to the Executive Office of the President ("EOP"). According to the Order, the USDS Administrator—also referred to as the "Administrator of the Department of Government Efficiency" in other presidential documents—would be the head of USDS.

20. USDS has a self-contained structure.

21. USDS does more than merely advise and assist the President. In fact, USDS wields substantial authority independently of the President, whether by the terms of the Order or other applicable rules or regulations or in actual practice.

22. Since 20 January, USDS staff have entered numerous government agencies and have: (a) gained access to computer systems previously available only to agency employees; (b) rendered decisions related to agency payments or agency personnel; and (c) ordered agency supervisors or staff to take various actions.

23. For example, USDS has taken credit for "saving the Federal Government approx.. $1 billion/day, mostly from stopping the hiring of people into unnecessary positions, deletion of DEI and stopping improper payments to foreign organizations, all consistent with the President's Executive Orders." Department of Government Efficiency (@DOGE), X.com (Jan. 28, 2025 7:20 PM), at https://x.com/DOGE/status/1884396041786524032 (last accessed Mar. 25, 2025).

24. Stopping the hiring of people into allegedly unnecessary positions is an exercise of independent authority.

25. Deletion of "DEI," meaning information, initiatives, or programs related to diversity, equity, and inclusion, is an exercise of independent authority.

26. Stopping allegedly improper payments to foreign organizations is an exercise of independent authority.

27. As another example, USDS has taken credit for "feeding USAID into the wood chipper." Elon Musk (@elonmusk), X.com (Feb. 3, 2025 1:54 AM), at https://x.com/elonmusk/status/1886307316804263979 (last accessed Mar. 25, 2025).

28. Feeding a federal agency into a wood chipper is an exercise of independent authority.

29. USDS continues to use Signal—which allows messages to be set to disappear after a period of time—to conduct official business. Alexandra Ulmer, Marisa Taylor, Jeffrey Dastin, & Alexandra Alper, *Exclusive: Musk's DOGE using AI to snoop on U.S. federal workers, sources say*, Reuters (Apr. 8, 2025), at https://www.reuters.com/technology/artificial-intelligence/musks-doge-using-ai-snoop-us-federal-workers-sources-say-2025-04-08/ (last accessed Apr. 9, 2025).

### PART III: MUSK IS IN CHARGE OF USDS

30. Even though the White House has filed documents in litigation contending that Amy Gleason ("Gleason") is the Acting USDS Administrator, all evidence points to Musk actually running USDS in practice if not in formal name.

31. For example, on 19 February, President Trump publicly stated, "I signed an order creating the Department of Government Efficiency and put a man named Elon Musk in charge." Anna Bower (@annabower.bsky.social), Bluesky (Feb. 19, 2025 6:11 PM), *at* https://bsky.app/profile/annabower.bsky.social/post/3likvkcjnr22h (last accessed Mar. 25, 2025).

32. On 22 February, President Trump posted on social media, "ELON IS DOING A GREAT JOB, BUT I WOULD LIKE TO SEE HIM GET MORE AGGRESSIVE." Donald J. Trump (@realDonaldTrump), Truth Social (Feb. 22, 2025 8:04 AM), *at* https://truthsocial.com/@realDonaldTrump/posts/114047677181856301 (last accessed Mar. 25, 2025). Within seven hours, Elon Musk posted on social media, "Consistent with President @realDonaldTrump's instructions, all federal employees will shortly receive an email requesting to understand what they got done last week. Failure to respond will be taken as a resignation." Elon Musk (@elonmusk), X.com (Feb. 22, 2025 2:46 PM), *at* https://x.com/elonmusk/status/1893386883444437415 (last accessed Mar. 25, 2025). The promised email was sent out by the Office of Personnel Management ("OPM") soon after.

33. In a press conference on 24 February, President Trump reiterated that people who did not respond to Musk's OPM email would be "sort of semi-fired or . . . fired." Courtney Kube, *et al.*, *DOGE will use AI to assess the responses of federal workers who were told to justify their jobs via email*, NBC News (Feb. 24, 2025), *at* https://www.nbcnews.com/politics/doge/federal-workers-agencies-push-back-elon-musks-email-ultimatum-rcna193439 (last accessed Mar. 25, 2025).

34. Even after OPM reversed its earlier position and stated that responses were entirely voluntary, Musk posted on social media that same day that a second OPM email would be forthcoming and that "[s]ubject to the discretion of the President, [Government employees] will be given another chance[,]" warning that "[f]ailure to respond a second time will result in

termination." Elon Musk (@elonmusk), X.com (Feb. 24, 2025 7:06 PM), *at* https://x.com/elonmusk/status/1894177129887404484 (last accessed Mar. 25, 2025). The second OPM email was sent on 28 February 2025.

35. On 26 February 2025, in his first Cabinet meeting of the year, which was attended by Musk, President Trump again acknowledged Musk's position as the head of USDS: "I'm going to ask if it's possible to have Elon get up first and talk about DOGE. . . . So Elon, if you could get up and explain where you are, how you're doing, and how much we're cutting." *Trump: People who didn't respond to 'what did you do' email are on the bubble*, Scripps News (Feb. 26, 2025), *at* https://www.youtube.com/watch?v=Jd-MlbvYIes (last accessed Mar. 25, 2025).

36. In this Cabinet meeting, Musk, for his part, consistently referred to "the DOGE team" as "we" over ten times in three minutes in his remarks to the Cabinet, while admitting that "we"—meaning USDS—sent out the OPM email. *Id.*

37. On 4 March 2025, President Trump, in his Joint Address to Congress, stated that DOGE was "headed by Elon Musk."

38. It has been widely reported that Musk has been inviting officials to call him on his cell phone to discuss DOGE. Annie Grayer, *et al.*, *Republicans push Musk to let Congress vote on DOGE cuts*, CNN (Mar. 5, 2025), *at* https://www.cnn.com/2025/03/05/politics/musk-doge-republicans/index.html (last accessed Mar. 25, 2025) ("Musk gave out his cell phone number during the closed-door meeting to GOP senators and told them he wants to work more closely with them."); Nikki McCann Ramirez & Asawin Suebsaeng, *Trump's cabinet sure seems pissed about Elon Musk*, Rolling Stone (Mar. 7, 2025), *available at* https://www.rollingstone.com/politics/politics-news/musk-spars-trump-cabinet-officials-1235291830/ (last accessed Mar. 25, 2025) (reporting that, in a confrontation with Transportation Secretary Sean Duffy, Musk "offer[ed] him his phone number").

39. Lastly, on 19 March 2025, the attorneys for defendants X Corporation, X Holdings Corporation, and Musk himself submitted a letter to the U.S. District Court for the District of Delaware detailing their objections to the plaintiffs' request to depose Musk. In this letter, Musk's *own private lawyers* stated: "And the presumed undue burden from a deposition is heightened

because Musk is not only X Corp.'s (and other companies') highest executive, but he is a high-ranking government official. The White House has designated Musk a 'special government employee' *in charge of Establishing and Implementing the President's Department of Government Efficiency ("DOGE").*" Ltr., Dkt. #144, at 3 (filed Mar. 19, 2025), *Arnold v. X Corp.*, No. 23-528 (D. Del.) (emphasis added) (citations omitted).

40. Despite this public trail clearly identifying Musk as the head of USDS, the Director of the EOP Office of Administration has, under penalty of perjury, stated that Musk is merely a "Senior Advisor to the President" and is "not an employee of the U.S. DOGE Service or U.S. DOGE Service Temporary Organization." Fisher Decl., Dkt. #24-1, ¶ 6 (filed Feb. 17, 2025), *State of N.M. v. Musk*, No. 25-429 (D.D.C.).

41. Gleason herself has submitted a declaration in another case on 14 March 2025 stating unequivocally: "Elon Musk does not work at USDS. I do not report to him and he does not report to me. To my knowledge, he is a Senior Advisor to the White House." Gleason Decl., Dkt. #20-2, ¶ 6 (filed Mar. 14, 2025), *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, No. 25-511 (D.D.C.).

42. Upon information and belief, the Fisher and Gleason declarations—and other comparable statements—have been made in bad faith to insulate Musk from any accountability or transparency as the head of USDS.

## FIRST CAUSE OF ACTION
## (CONSTRUCTIVE DENIAL – MSW MEDIA REQUEST NO. 1)

43. Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

44. On 11 February 2025, MSW Media submitted to USDS a FOIA request for "all emails sent or received by employees of the US DOGE Service between February 7th, 2025, and February 10th, 2025, inclusive."

45. MSW Media sent this request by Federal Express to U.S. DOGE Service, Executive Office of the President, 1600 Pennsylvania Avenue, NW, Washington, DC 20500, and it was delivered on 13 February 2025.

46. As of this writing, USDS has not acknowledged or responded to this request.

47. MSW Media has a legal right under FOIA to obtain the information it seeks, and there is no legal basis for the denial by USDS of said right.

## SECOND CAUSE OF ACTION

## (CONSTRUCTIVE DENIAL – FAC REQUEST NO. 1)

48. Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

49. On 25 February 2025, FAC submitted to USDS a FOIA request for "all emails or other electronic text communications sent or received by any employees of the U.S. DOGE Service or U.S. DOGE Service Temporary Organization from January 20, 2025, to the date of this request in which Elon Musk was either the sender or a recipient."

50. FAC sent this request by Federal Express to U.S. DOGE Service, Executive Office of the President, 1600 Pennsylvania Avenue, NW, Washington, DC 20500, and it was delivered on 27 February 2025.

51. As of this writing, USDS has not acknowledged or responded to this request.

52. FAC has a legal right under FOIA to obtain the information it seeks, and there is no legal basis for the denial by USDS of said right.

## THIRD CAUSE OF ACTION

## (CONSTRUCTIVE DENIAL – FAC REQUEST NO. 2)

53. Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

54. On 10 March 2025, FAC submitted to USDS a FOIA request for records from Musk's cell phone.

55. FAC provided introductory context regarding the aforementioned reports that Musk had given his cell phone number to policymakers and then requested: "1) any record or records of all phone calls made or received using the phone number(s) that Musk gave to the Republican Senators and Secretary Duffy; and 2) all emails or other electronic text communications sent or

received using the phone number(s) that Musk gave to the Republican Senators and Secretary Duffy."

56. FAC further specified that USDS "may limit the scope of this request to calls or messages pertaining to the activities of [DOGE]" and "may also limit the scope of this request to the last 500 phone calls, last 1000 emails, and last 5000 electronic messages as of the date of your first search for responsive records."

57. FAC requested classification as a representative of the news media, a public interest fee waiver, and expedited processing.

58. FAC concluded the request: "Please begin accepting FOIA requests electronically as required by statute."

59. FAC sent this request by Federal Express to U.S. DOGE Service, Executive Office of the President, 1600 Pennsylvania Avenue, NW, Washington, DC 20500, and it was delivered on 12 March 2025.

60. As of this writing, USDS has not acknowledged or responded to this request.

61. FAC has a legal right under FOIA to obtain the information it seeks in an expedited manner and free of charge, and there is no legal basis for the denial by USDS of said right.

## FOURTH CAUSE OF ACTION
## (REFUSAL TO ACCEPT ELECTRONIC REQUESTS)

62. Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

63. FOIA requires: "The Director of the Office of Management and Budget, in consultation with the Attorney General shall ensure the operation of a consolidated online request portal that allows a member of the public to submit a request for records under subsection (a) to any agency from a single website. . . . This subsection shall not be construed to alter the power of any other agency to create or maintain an independent online portal for the submission of a request for records under this section."

64. OMB established the FOIA.gov portal pursuant to this section.

65. Accordingly, every agency is required to accept FOIA requests submitted using FOIA.gov under this section.

66. As of this writing, FOIA requests may not be submitted to USDS through FOIA.gov.

67. Upon information and belief, USDS and OMB maintain an ongoing policy, pattern, practice, or standard operating procedure ("SOP") of refusing to allow electronic FOIA requests to be submitted to USDS through FOIA.gov.

68. The Court has virtually unlimited equitable authority to declare a "sufficiently outrageous" ongoing policy, pattern, practice, or SOP to be unlawful even if the agency reverses its position with respect to the FOIA request in question.

69. A policy, pattern, practice, or SOP of refusing to allow electronic FOIA requests to be submitted to an agency through FOIA.gov is in violation of FOIA. Such a practice constitutes outrageous conduct for purposes of the broad equitable powers provided by FOIA to the Court. Such a policy is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

70. As frequent FOIA requesters, Plaintiffs stand to continue to be harmed by this ongoing practice in the future. In addition to the FAC request discussed in Count 3, Plaintiffs have submitted additional requests to USDS through FedEx which are not included in this litigation, and they have asked as part of those requests that USDS begin accepting electronic requests. Furthermore, given the vital public interest in learning how USDS conducts its business, Plaintiffs have concrete plans to file more such requests in the near future, and they are materially harmed by USDS's refusal to accept electronic requests.

71. Plaintiffs and numerous other organizations and individuals have also formally requested that OMB allow requesters to submit requests to USDS through FOIA.gov.

72. Plaintiffs are therefore entitled to relief in the form of a declaratory judgment that USDS and OMB are in violation of their statutory responsibilities under FOIA and an injunction

compelling USDS pursuant to that statute to accept electronic FOIA requests submitted through FOIA.gov and compelling OMB pursuant to that statute to allow requesters to submit electronic requests to USDS through FOIA.gov.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs MSW Media, Inc. and First Amendment Coalition pray that this Court:

(1)  Declare and find that the United States DOGE Service is an agency subject to FOIA;

(2)  Order USDS to release all requested records to them;

(3)  Order USDS to classify FAC as a representative of the news media where requested;

(4)  Order USDS to grant FAC's request for a public interest fee waiver where requested;

(5)  Order USDS to process FAC's request as soon as practicable where requested;

(6)  Declare and find that USDS and OMB violated FOIA by refusing to allow electronic requests to be submitted to USDS through FOIA.gov;

(7)  Declare and find that any USDS or OMB rules, guidelines, or policy statements that authorize the refusal to accept electronic requests submitted through FOIA.gov constitute an unreasonable interpretation of the statutory obligations imposed by FOIA;

(8)  Order USDS, in the form of injunctive relief, to accept electronic requests submitted through FOIA.gov and to amend its rules, guidelines, and policy statements accordingly;

(9)  Order OMB, in the form of injunctive relief, to allow electronic requests to be submitted to USDS through FOIA.gov and to amend its rules, guidelines, and policy statements accordingly;

(10)  Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(11) Award reasonable costs and attorneys' fees as provided in 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412(d), or any other applicable law;

(12) Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(13) Grant such other relief as the Court may deem just and proper.

Dated: April 10, 2025

Respectfully submitted,

NATIONAL SECURITY COUNSELORS

By  */s/ Kel McClanahan*
KEL MCCLANAHAN (*Pro Hac Vice*)
Attorney for Plaintiffs MSW MEDIA, INC.
and FIRST AMENDMENT COALITION