DAVID LOY, Cal. Bar No. 229235
ANN CAPPETTA, Cal. Bar No. 354079
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901-3334
Telephone:   415.460.5060
Facsimile:   415.460.5155
Email:       dloy@firstamendmentcoalition.org
             acappetta@firstamendmentcoalition.org

KEL MCCLANAHAN (*Pro Hac Vice*)
NATIONAL SECURITY COUNSELORS
1451 Rockville Pike, Suite 250
Rockville, MD 20852
Telephone:   501.301.4672
Email:       kel@nationalsecuritylaw.org

Attorneys for Plaintiffs MSW MEDIA, INC. and
FIRST AMENDMENT COALITION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MSW MEDIA, INC., and FIRST AMENDMENT COALITION,<br><br>             Plaintiffs,<br><br>     v.<br><br>UNITED STATES DOGE SERVICE, and OFFICE OF MANAGEMENT AND BUDGET,<br><br>             Defendants. | Case No. 3:25-cv-02881-AMO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER FIRST AMENDED COMPLAINT AND IN THE ALTERNATIVE, MOTION TO STAY**<br><br>Date:   August 7, 2025<br>Time:   2:00 p.m.<br>Judge:  Hon. Araceli Martínez-Olguín |

Plaintiffs MSW Media, Inc. ("MSW Media") and First Amendment Coalition ("FAC") filed their Complaint—and later their First Amended Complaint—against the United States DOGE Service ("USDS") and Office of Management and Budget ("OMB") jointly in this Court in the interest of judicial economy and in recognition of the fact that MSW Media's Freedom of Information Act ("FOIA") request was miniscule in scope compared to FAC's requests, yet still related in both its factual and legal substance. (*Compare* 1st Am. Compl., Dkt. #13, ¶ 44 (filed Apr. 10, 2025) (describing MSW Media's request for three days' worth of emails) [hereinafter Am.

Compl.], *with id.* ¶¶ 49, 54-56 (describing FAC's requests for several months' worth of emails and electronic messages).) Despite the comparative insignificance of MSW Media's independent stake in this case, Defendants seized on its inclusion as an opportunity to not only delay these proceedings with a formal motion to transfer venue, but to ask the Court to transfer this case *in its entirety* to the U.S. District Court for the District of Columbia ("D.C. District Court"). In light of Defendants' dilatory posture, Plaintiffs will agree—if the Court feels it is appropriate[1]—to the severance of MSW Media and Count 1 from the First Amended Complaint and transfer of that severed case to the D.C. District Court, so that this case can proceed normally and the Court can adjudicate the actual merits of Plaintiffs' claims in a timely fashion. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991) ("[W]here certain claims in an action are properly severed under Fed. R. Civ. P. 21, two separate actions result; a district court may transfer one action while retaining jurisdiction over the other.") (footnote omitted). Plaintiffs absolutely contest, however, that the case should be transferred in its entirety, but they conditionally agree that the case should be stayed pending further action—or inaction—by the Supreme Court.

## ARGUMENT

### I.      THE CASE SHOULD NOT BE TRANSFERRED

If the Court removes MSW Media from the equation, Defendants' argument in favor of transferring the case describes practically every FOIA case brought in every district court besides the D.C. District Court, and yet courts across the country—and many in this District and even more in this Circuit—still adjudicate FOIA cases instead of transferring them to the D.C. District Court. It is in this context that Defendants' Motion should be understood, and when so evaluated, its lack of merit is apparent.

Defendants argue that "Plaintiff's choice of forum is entitled to little, if any, weight given that none of the underlying background factual allegations occurred in this District. The sole factual

---

[1] To be clear, Plaintiffs maintain that the Court should not sever the case, for reasons explained below.

predicate . . . [is] First Amendment Coalition's principal place of business in San Rafael." (Defs.' Mot. Dismiss or Transfer 1st Am. Compl.; in the Alter., Mot. Stay. Dkt. #18, at 17 (filed May 27, 2025) [hereinafter Defs.' Mem.] (citation omitted).[2] According to Defendants, this lack of deference is appropriate "where most allegations in the complaint occurred in the transferee district . . . [or] another district 'situated a substantial distance' away from the plaintiff's chosen forum." (Defs.' Mem. at 16 (quoting *Barroca v. United States*, No. 19-699, 2019 WL 5722383, at *2-3 (N.D. Cal. Nov. 5, 2019)).) Defendants also argue that related factors also weigh in favor of transfer: "the government entities involved—USDS and OMB—are headquartered in that district; almost all of Defendants' witnesses, any FOIA personnel, and government counsel are located in that district or its surrounding areas; . . . the evidence relating to Plaintiff's pattern or practice claim—founded on conduct of these Washington, D.C. government entities and their policies, practices or standard operating procedures—is situated in that district and/or the surrounding areas[; and] . . . [t]he Northern District of California does not have any special interest in the controversy." (*Id.* at 18.)

However, this litany of statements also fairly describes most FOIA cases. Most allegations in FOIA cases involve the processing of requests by federal agencies, most of which are headquartered in Washington, DC. Because of this, most Government witnesses and FOIA personnel are located in or near Washington, DC (although Plaintiffs cannot explain why Defendants' counsel stated that *his* office was "located in that district or its surrounding areas," since he is an Assistant United States Attorney for the Northern District of California), and most evidence about agency policies, practices, and standard operating procedures is also located in those agencies. As a result, in most FOIA cases the court in which the case was filed "does not have any special interest in the controversy."

In fact, one need only consider the recent case *American Small Business League v. OMB* to see the weakness of Defendants' argument. In that case, *Defendants' current counsel* litigated a FOIA case over "[a]ny and all documents indicating or containing the total federal acquisition

---

[2] Plaintiffs have modified the specific meaning of Defendants' quoted sentence because they are not alleging that they "mailed [FAC's] FOIA requests using a local Federal Express service" (*id.*), and therefore FAC's principal place of business is the core basis for venue in this Court. (Am. Compl. ¶ 7.)

budget for FY 2017, FY 2018, and FY 2019." 631 F. Supp. 3d 804, 807 (N.D. Cal. 2022) [hereinafter *ASBL*]. The agency "contacted subject matter experts in two divisions," *id.* at 808, both of which were located in its Washington, DC headquarters. OMB's key witnesses were its Deputy Assistant Director for Budget and its Acting Administrator and Deputy Administrator for Federal Procurement Policy, who were also located in Washington, DC. *Id.* OMB conducted an electronic search of its Washington, DC headquarters, returning thirteen potentially responsive records. *Id.* at 810. OMB's counsel engaged in a significant amount of electronic correspondence with the plaintiff's counsel, in which he consistently represented OMB's positions without any apparent difficulty. *Id.* at 810-12. Lastly, beyond the fact that the plaintiff was headquartered in this District, this District could not be said to "have any special interest in the controversy" (Defs.' Mem. at 18) over records of "federal spending data across the government." *ASBL* at 812. Despite all of these allegedly compelling reasons which "weigh heavily in favor of transfer to the District of Columbia" (Defs.' Mem. at 17), Defendants' counsel was able to fully litigate that case without once requesting that it be transferred. In light of this, the Court should be confident he can similarly represent the Government's interests in this case.

   Now that the low-hanging fruit is out of the way, the Court can consider the less frivolous—though no more meritorious—arguments in Defendants' Motion. First is Defendants' contention that Plaintiffs' choice of forum should be given "little, if any, weight." (Defs.' Mem. at 17.) In fact, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *Blixseth v. FBI*, No. 21-67, 2021 WL 1991258, at *2 (D. Nev. May 18, 2021) (citing *Piper*). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981); *see also Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell*); *Wm. A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972) ("Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."). In this Circuit in particular, "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In short, "a plaintiff's choice of forum is afforded substantial weight." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). Defendants' generally applicable complaints about litigating a FOIA case outside of the D,C. District Court are woefully insufficient to meet their burden.

Second, Defendants contend that, because FAC "will not have to travel to the District of Columbia for trial," a transfer "will pose minimal inconvenience to Plaintiffs' counsel." (Defs.' Mem. at 17.) They base this contention on the fact that Plaintiffs' lead counsel is located in the Washington, DC area, while ignoring that Plaintiffs are also represented by two *other* lawyers, each of whom reside in California. Even setting aside the questionable distinction between attending a trial and attending a hearing, transferring this case would mean that two-thirds of Plaintiffs' legal team would need to litigate in a forum across the country from themselves instead of one-third. This is hardly a "minimal inconvenience."

Defendants' last argument regarding transfer is its weakest:

> Instead, the District of Columbia has a greater local interest in interpreting FOIA in the context of Plaintiffs' lawsuit bearing the novel issue of whether USDS is an agency under FOIA because "it is the default forum for FOIA lawsuits and many federal agencies, including both Defendants in this case, are headquartered in or near that district. . . . "[T]he D.C. Circuit is recognized as 'something of a specialist' in adjudicating FOIA cases 'given the nature of much of its caseload.'" And, while Defendants do not question this Court's familiarity with FOIA law, "the District of Columbia is widely acknowledged as having significant and specialized expertise in working with the FOIA."

(*Id.* at 18-19 (quoting, *inter alia*, *Sanchez Mora v. U.S. Customs & Border Prot.*, No. 24-2430, 2024 WL 5378335, at *8 (N.D. Cal. Nov. 4, 2024)) (citations omitted).) This argument is frivolous. As another court succinctly explained, "Plaintiff contends that the District of Columbia contains the largest body of governing law in FOIA cases and that this favors transfer. But, this factor is at best neutral, as both courts should be equally familiar with the federal law that governs this case." *Price v. DOJ*, No. 16-24341, 2018 WL 11397210, at *4 (S.D. Fla. May 21, 2018). This Court—and any other federal court—is equally capable of adjudicating a FOIA case, even one presenting a novel legal issue.

In fact, this Court should consider the Government's conduct in a related case in the Southern District of New York as an example of how dubious this entire line of argument is. On

24 March 2025, The Intercept Media, Inc. ("the Intercept") filed a complaint in the Southern District of New York asserting the same legal right to USDS records under FOIA as those asserted in this case and *Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*, No. 25-511 (D.D.C.) ("*CREW*"). *See* Defs.' Mem. Law Supp. Defs.' Mot. Dismiss Compl., Dkt. #19, at 7 (filed Apr. 28, 2025) [hereinafter *Intercept* Defs.' Mem.], *The Intercept Media, Inc. v. U.S. Dep't of Gov't Efficiency*, No. 25-2404 (S.D.N.Y.) [hereinafter *Intercept*]. The Intercept filed its case two months after *CREW* was filed. (Defs.' Mem. at 8).

On 28 April 2025, ten days after "the government filed a petition for a writ of mandamus in the D.C. Circuit [in *CREW*] and moved for a stay pending the D.C. Circuit ruling on the petition (Defs.' Mem. at 9), the Government filed a motion to dismiss in *Intercept*, never once complaining about either the inconvenience of the venue or the fact that the D.C. District Court should be the court to consider "the novel issue of whether USDS is an agency under FOIA" (*id.* at 18). *Intercept* Defs.' Mem. *passim*. On 19 May 2025, five days after the D.C. Circuit denied the Government's mandamus petition and stay motion in *CREW* (Defs.' Mem. at 9), the Government filed its reply brief in *Intercept*, still without complaining about the propriety of the venue. Defs.' Reply Mem. Further Supp. Defs.' Mot. Dismiss Compl., Dkt. #19, *passim* (filed May 19, 2025), *Intercept*. Nor *could* the Government complain about the D.C. District Court's unique interest in deciding such a novel issue, since it heavily relied on the Second Circuit's opinion on a practically identical question in *Main Street Legal Services, Inc. v. National Security Council*. *Id. passim* (citing 811 F.3d 542 (2d Cir. 2016)).

In other words, Defendants have no reservations about litigating this "novel issue" in the Second Circuit, where there is an opinion that they believe favors them. They are not concerned about judicial economy or convenience *there*. Their only goal is to avoid litigating this "novel issue" *here*, in *this* Court, in *this* Circuit. Defendants are transparently attempting to forum shop while implying that it is *Plaintiffs* who are doing so. (Defs.' Mem. at 13.) The Court should decline to entertain these frivolous arguments, and should in fact decline to transfer *any* of the counts "because of concerns over forum shopping." *Sanchez Mora*, 2024 WL 5378335, at *4. As for Defendants' argument that the Court should dismiss all or part of the case for improper venue,

those arguments fail for the same reasons stated above. This Court should roundly deny Defendants' Motion and allow the case to proceed normally, absent any more dilatory conduct.

## II.     MSW MEDIA SHOULD NOT BE SEVERED

While Plaintiffs do agree to severance *if the Court believes it is appropriate*, they continue to maintain that it would not be appropriate in this case. While there is no controlling case law in this Circuit regarding pendent venue, Plaintiffs will not ask the Court to weigh in on that nuanced question. Instead, as an act of compromise, Plaintiffs have instead rendered the question moot. On 9 June 2025, the parties sent USDS, through its counsel, two letters, which stated that FAC formally joined the FOIA request submitted by MSW Media on 11 February as a joint requester. (McClanahan Decl. ¶¶ 2-3, Exs. A-B, attached hereto.) Since USDS has not yet begun processing the FOIA request in question, it cannot claim to be prejudiced by the addition of a joint requester.

It is incontrovertible that multiple entities can jointly file a FOIA request and jointly litigate the processing of that request. *See, e.g.*, *Islamic Shura Council of S. Cal. v. FBI*, 779 F. Supp. 2d 1114, 1116 (C.D. Cal. 2011) (describing FOIA request submitted jointly "by six organizations and five individuals"). It is equally well-established that a co-requester can be added after the submission of the original request. *See, e.g.*, *Canning v. Dep't of State*, 346 F. Supp. 3d 1, 11 (D.D.C. 2018) ("Jeffrey Steinberg was later added as a co-requester."). Finally, all that is required to satisfy FOIA's venue requirement regarding such a request is for *one* of the joint requesters to be able to establish venue. *See, e.g.*, *Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 897 (11th Cir. 2024) (describing case in which three foreign nationals jointly litigated several FOIA requests with one "legal resident of Florida, [who] was a co-requester with the other plaintiffs"); *see also* Compl., Dkt. #1, ¶¶ 33, 63 (filed Apr. 23, 2019), *Jimenez v. Dep't of Homeland Sec.*, No. 19-21546 (S.D. Fla.) (indicating that Florida resident joined two FOIA requests seven months and four years after submission, respectively). Therefore, by joining MSW Media as a co-requester for the records described in Count 1, FAC has rendered the question of severance moot, and the Court could accordingly deny Defendants' Motion to Transfer in its entirety on that basis alone.

### III. PLAINTIFFS CONDITIONALLY CONSENT TO A STAY

In light of the fact that the Supreme Court issued a stay of discovery in *CREW* on 6 June 2025, *see U.S. DOGE Serv. v. CREW*, No. 24-1246, 2025 WL 1602338, at *1 (June 6, 2025), Plaintiffs agree to stay the merits briefing of this case pending further developments from the Supreme Court. The Court remanded the case to the D.C. Circuit "to narrow the April 15 discovery order," and further held that the D.C. District Court's orders "are stayed pending remanded consideration at the Court of Appeals, and disposition of the petition for a writ of certiorari, if such writ is timely sought. Should the petition for a writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for a writ of certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court." *Id.*

However, there remains one issue in controversy in this case which should *not* be stayed, and Plaintiffs request that the Court exclude any briefing on that issue from the stay order. Plaintiffs made a compelling case for the Court to conclude that Elon Musk ("Musk") was in charge of USDS. (Am. Compl. ¶¶ 30-42.) This analysis formed the basis for the FOIA request which is the subject of Count 3, which requests numerous records from the cell phone used by Musk to conduct official USDS business. (*Id.* ¶¶ 54-56.) Defendants argue that Musk was "not an employee of USDS" (Defs.' Mem. at 6) and will be expected to argue that because Musk was "an advisor to the President and Senior Advisor to the White House" (*id.*), his records are not subject to FOIA even if USDS records are.

However, this case has been overtaken by events, and Musk no longer works for the Executive Office of the President in any capacity. Therefore, notwithstanding Defendants' contention that "Mr. Musk's records are covered by the White House's preservations [sic] policies" (*id.* at 22), Plaintiffs believe that records responsive to Count 3 are at risk of being destroyed or removed from Government custody absent an order from the Court. Therefore, in the near future, after an attempt to negotiate with Defendants, Plaintiffs will likely file a motion asking the Court to order the Government to obtain all potentially responsive records from Musk's cell phone to ensure that they are not destroyed. Therefore, it would be inappropriate for the Court to preclude Plaintiffs from seeking such interim relief during the stay. However, in the interest of judicial economy,

Plaintiffs will agree that the Government need not *do* anything with the records other than maintain them until the stay is lifted. Then, if the Supreme Court decides that USDS is not subject to FOIA, the records may be destroyed, and if the Supreme Court does *not* reach that conclusion, the case will be ripe for briefing on whether the records constitute USDS records.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion, except to the extent that it orders a stay of merits briefing in this case. The Court should decline to dismiss or transfer the case, in whole or in part, to the U.S. District Court for the District of Columbia.

Dated: June 10, 2025

NATIONAL SECURITY COUNSELORS

By      */s/ Kel McClanahan*
KEL MCCLANAHAN
Attorney for Plaintiffs MSW MEDIA, INC.
and FIRST AMENDMENT COALITION